I'm not sure if I'm pronouncing it right, but you'll correct me. Council is both present for this, so this will be a good old-fashioned argument except we're all wearing masks. All right, Mr. Langrock, am I pronouncing your name correctly? All right, so you have 10 minutes, but you've reserved 2 minutes for rebuttal. So the floor is yours. You may proceed. Thank you, Your Honor. I've briefed three issues, and I'd like to talk about them in reverse order. But before doing that, I want to put this in context. This is not a case we're asking for free man because of constable Bundy. We're asking for a rehearing on matters we think reach the level of due process. Overall, there's no question in reading the record that if you believe the testimony of Solominko, that there is a substantial evidence that my client was involved in the various activities. The third point that I mentioned in the brief was the question of the receipt, which indicated that my client was a prisoner at Rikers Island. I think a fair reading... Well, it doesn't really. It just has his name on it, and it is a receipt from the Department of Correction, right? It doesn't say he's an inmate. Anybody looking at that, I think in fairness would say that that's an indication that he's in jail. In fact, juror number 10 indicated that, and it would call the detention... But counsel, even assuming that this was not record evidence which was brought in, and that there is a presumption of vacator when non-record evidence comes in, isn't the evidence on this issue sufficiently strong so it clearly is harmless? I mean, I don't... You know, the district court gave various other reasons. I'm not as comfortable with them. But on the pure harmlessness of this, on this record, given... You know, this is relevant, but not a clear statement you were guilty of a crime. How can it be anything but harmless on these facts? Your Honor, I'd like to put it this way. If this were a trial judge and this was presented and got to the jury during the course of the trial and asked for a mistrial, I believe virtually every trial judge would grant it. Really? This is a situation... You think every trial judge would grant this? If this got presented to the jury, this document, do you think that would be a no-brainer, automatic mistrial? I think, Your Honor, that it's clear that this document would not be admissible. If it were presented to a jury which indicated that the defendant was in jail and it's only there, the only thing it shows is a propensity, and that is one of the... How did it show that he was in jail? It was equivocal. I looked. It could easily... It appeared to be a receipt from someone who had deposited money in an account, but it does not indicate whose account. Your Honor, perhaps I'm naive in this situation, but reading that, it seems to me that it's clear that it indicates that Stavis was involved at Riker Island. That what? That he was there at Riker Island. Well, it implies... He could have been visiting one of his confederates. There are lots of things that would potentially excuse it. There are lots of ways it might be something else, but the reality is that somebody looking at it and, in fact, the juror number 10 didn't see it that way. But I'm willing to go even further and say that this was an indication that he was in jail, but on this record, how could that have possibly made a difference to the jury one way or the other? Well, Your Honor... The evidence on everything against your client, I mean, you know, there may be the questions that you raise about whether it was this or that or the other, whether it was conspiracy to do this, but basically the evidence against your client was overwhelming. Your Honor, that is, if you accept Salenko's testimony, if you throw that out completely, and the jury could throw that out completely, I mean... But wait, there were electronic messages between your client and a co-conspirator about creating fraudulent utility bills. There were text messages about opening fraudulent bank accounts. There's the testimony, of course, of the co-conspirator. There's also surveillance showing people doing exactly what was described by the co-conspirator, by the cooperator, right? If you believe him. Well, I mean, he's corroborated, right? Well, some of it was, Your Honor, but certainly the great bulk of it wasn't. And my client's position of the trial was, you know, he used pro se, was the fact that he didn't know that it was a criminal activity. Now, it may be hard to believe, and one of the things... But that's the problem, that his basic argument is that he was involved in one thing but not in another. But that isn't really relevant under our cases, because if you're guilty of conspiracy of one thing, that's enough at least for jurisdiction as to the other. So that we don't have really any argument on his part that he wasn't involved. And if he was involved, then how can this other stuff not be believable, and how can this bit of, let's assume improperly admitted evidence, and let's even assume that people will say, may misunderstand this to mean that he was in jail. But how can it make any difference? Your Honor, the situation, as I look at the receipt, it violates what I think is the intensity situation. In reality, the chances that the court has to weigh the difficulties of having a second trial or going back, realities are this will never go back to a second trial. The chances of that ever happening. And it's a question that, from my standpoint, is saying, well, the court says a document like this that gets in there, which has the potential to be prejudicial, should not be allowed. Okay. So what you are saying is something that we have not held. That is, that whenever extra record evidence comes in, there should be a reversal, regardless of harmless, because that is so dramatically bad that we should treat it like an exclusionary rule and just say no. But we have never held that. We've never held that the admission of this so far taints that regardless of harmlessness, the case should be overthrown. And I think we should be careful about putting in exclusionary rules, because they have all sorts of other problems. I hear you, Your Honor. I don't, I see my time here is virtually up. But a similar situation goes back in connection with the second point, which was the juror that was court-purchased. And, again, I think that holds under the Phillips case for a hearing. Paul, why do you think – what's your argument that the note was inherently extremely prejudicial? I mean any juror exercising his or her common sense would have assumed that a person who was arrested on charges like this had spent some time in jail. So the fact that he – Your Honor, that in my mind just violates the principle of the presumption of innocence, and the jurors are told not to do that. And here we are allowing evidence in that which is in violation of that very same principle. It seems to me that this very statement of that principle is the important thing, and it is not a burden upon the system to have a trial that is free of that, even though it might have come out the same way. It's important for the overall picture of the system of justice when there is an error like this to have that said that that's not – propensity evidence is not appreciable or not allowable. But it's not purely – I mean, it might be relevant because it shows ownership, right? I mean, it was found in a backpack that the document with his name on it reflects that he owns the backpack and is responsible for the contents of the backpack. Is that not relevant? I mean, other items in the backpack were specifically admitted, right? It seems to me the arguments of that nature are really justification for an improper admission. The real effect of this situation and many times else is the propensity. And it is something that I think we should guard against. Well, no one – we have a whole rule against propensity evidence. But the fact is that sometimes documents or evidence can be relevant but still susceptible to potential propensity problems, and so we have a balance in the weighing section. And in addition, defense counsel didn't object to the note coming in because defense counsel had an opportunity to – and correct me if I'm wrong – to examine all of the exhibits that were going back into the jury room. Is that right? Your Honor, the answer to that as far as I'm concerned is that this was a government exhibit. They had the duty to boulderize it, to clear it out, to place the burden upon a defendant in pro se to go back and examine the defendant's exhibit or the government's exhibit, I think is a shifting of the burden, which is inappropriate. You had standby counsel, right? Yes. Yes, and we thank you for being standby counsel. Was that you? Excuse me? You were not the standby counsel? No, no. I got this from – all I had is the record to work with. But, I mean, our case law is that defense counsel is as responsible for the prosecutor for making sure that what goes into the jury room are the exhibits, right? Your Honor – That's why you have standby counsel. That's what standby counsel is supposed to be doing, isn't it? If you're saying that the burden is upon defense counsel to make sure – I'm citing Second Circuit law. That's what I'm saying. I'm saying there is Second Circuit law that indicates that what goes into the jury room is as much the responsibility of the defense as it is of the prosecution, and that it is generally waived if you didn't object at the time it's going in. You disagree that that's the law of this circuit? I'm not familiar with your case law, Mr. – Temporeal? But I would suggest that it is – It's an old case. I would suggest that the – when it's a government exhibit, they are responsible for the content, and defense is not responsible for the content of a government exhibit. Now, the – obviously, it could have been noticed in other ways, but it got back there, and it was – the defense had no opportunity to inspect the evidence prior to the – going to the trial. I mean, this has been in their possession, government's possession for – from the beginning. Right. There's a right to inspect the government's evidence, right? This was – I'll ask the government when they get up here, but I assume that this was noticed in discovery under Rule 16, and if anybody wanted to look at it, they could. And if anybody wanted to look at it before it got received in evidence, they could. And if anybody wanted to look at it before it went into the jury room, they could. No question the defense counsel could have gone in and could have seen it. Yeah. Is your position here that since this was pro se, that maybe stand-by counsel should have done that, but that's a more complicated situation than one where you have actual counsel? But my problem is that even if this was not – we should treat this as if it had been objected to, we're still back to the question of harmlessness. The only response I can have to that, Your Honor, is I'm sympathetic to what you're saying, but it seems to me the principle of excluding this type of document and the principle of – You made your point that the exclusion of the certificate exists. Thank you. All right. Well, you've reserved two minutes for rebuttal, so thank you. We'll now hear from Mr. Rebold for the government. May it please the Court. My name is Jonathan Rebold, and I represent the United States on this appeal, and I also represented the United States below. Noting that the bulk of today's colloquy focused on the third issue, I'm happy to turn to that immediately. It's the government's position, and I submit that the record supports it, that Judge Castell properly ruled that the Department of Corrections receipt was not extra record evidence. But to the extent that it was, it was a relatively innocuous document. As Your Honors have noted, the receipt did not indicate that Mr. Stossett was an inmate, did not indicate that he was convicted of a crime. So not extra record because everybody knew that there were contents in the backpack. They were admitted in toto, though there were certain ones that were segregated out as sub-exhibits, right? Yes, Your Honor. Okay. So your view is that all the contents were received in evidence and there was no objection, and so, therefore, properly before the jury. It is, Your Honor. And just to take up one of the other points that Your Honor raised in questioning Mr. Langrock, defense counsel, before they became shadow counsel, were Mr. Stossett's appointed attorneys, and they were given an opportunity to review the contents of the bag. In fact, they were given the opportunity to review all of the physical evidence in this case, and they took advantage of that opportunity. There was a meeting at 26 Federal Plaza. I was present at that meeting. Defense counsel came. Is this in the record, or is this you're telling us sort of on the QT? This is in the motion papers on the Rule 33. It wasn't obvious to me that the government was even aware of this exhibit before it went to the jury. So is the record clear on that? So the record is through the declaration of Special Agent Turpin, which was appended to the government's Rule 33 response, there is support that there was a meeting at 26 Federal Plaza that defense counsel had and took advantage of an opportunity to review the contents of the bag. It is correct, Your Honor, that the government was not consciously aware of the Department of Corrections. But, counsel, why should we get into things which are really quite complicated? Was this part of a backpack admissibility or not? Was there a chance to go over it? Did the government know it? All these things are, you know, fairly tenuous. What we have is perfectly obvious of the record. One, that this is not a clear statement of guilt, prior guilt, and two, overwhelming evidence. So why do we need, why does the government need to argue more than just under these circumstances it was harmless? Why get us into doing issues of hard law that are not really before us? Certainly, Your Honor, I think there's ample support for the positions you just laid out. If the court finds or decides not to rule on whether Judge Castell properly decided that this evidence was actually admitted. The district judge did what district judges often do, give us three or four different reasons, which makes him irreversible. There was a famous judge, I think his name was Palmieri, who was known as the irreversible Judge Palmieri because he always gave 26 different reasons for something, one of which was bound to be good. Well, I was once one of those judges and you never knew what these other guys were going to do. So you had to be careful. It's perfectly sensible for the district judge to do that. But when it comes to us, why do we need to go down all of them? Well, I would submit because Judge Castell was actually correct in his ruling and the court can make that finding. But again, Your Honor, I think it's correct to say that even if we examine this as extra record evidence, in this case, one, it was a relatively innocuous document that does not definitively show that Stasiv was an inmate at Rikers Island. In fact, it certainly does not show that he was convicted of a crime. And two, when you view that document in light of all of the evidence, not just the cooperator Samalenko's testimony, but all of the evidence, testimony, surveillance video, cell site records, text messages, e-mails, surveillance video, physical evidence which included all of the other items in the very bag where this receipt was found, this case was proved with overwhelming evidence and such that even if it is extra record evidence, the government should still prevail in this case. Unless Your Honor has any other questions, and I'm happy to turn to the first two issues if the court wishes me to address them. No, I think that's fine. We'll hear now from Mr. Langrock for two minutes of rebuttal. Thank you, Your Honors. I think I've made most of my points clear. We agree or disagree on them. But the only thing is the overwhelming evidence that is suggested here by the government, I really don't believe that's the case in terms of count one specifically. In terms of count two, the position being that there should be a hearing, and under the Phillips case, I think that's clear. We've argued, I think, fully the positions regarding the receipt. Thank you. Thank you both. All right, thank you. We'll reserve decision.